UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
IVON CASTRO,

      Plaintiff,

   - against -

DINA SIMON, Individually and as Deputy
Commissioner; ELIZABETH CASTRO, 2nd
Vice President; CORRECTION OFFICERS'
BENEVOLENT ASSOCIATION, INC.;
STEVEN ISAACS, Attorney; MERCEDES
MALDONADO, Attorney; KOEHLER &
ISAACS LLP; and the CITY OF NEW YORK,

      Defendants.
------------------------------------------------------------ X

**MEMORANDUM AND ORDER**

17-CV-6083 (AMD) (LB)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JAN 07 2019 ★

BROOKLYN OFFICE

**ANN M. DONNELLY,** District Judge.

The plaintiff brought this action against the defendants—Correction Officers' Benevolent Association ("COBA") and Elizabeth Castro (together with COBA, the "Union defendants"), Koehler & Isaacs LLP, Steven Isaacs, and Mercedes Maldonado (the "Firm defendants"), and Dina Simon and the City of New York (the "City defendants"). The plaintiff filed an amended complaint, asserting claims pursuant to 42 U.S.C. § 1983 and New York Civil Service Law Section 75, alleging that the City defendants unlawfully terminated her employment as a correction officer, and that the Firm defendants and Union defendants failed to assist her in her attempt to get her job back. (ECF No. 21.) The Union defendants and the Firm defendants moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted and lack of jurisdiction, and the City defendants moved to dismiss for failure to state a claim. (ECF Nos. 24, 26.) For the reasons set forth below, the defendants' motions to dismiss the amended complaint are granted.

1

## BACKGROUND[1]

The plaintiff is a former correction officer in the New York City Department of Correction. (ECF No. 21 ¶ 1.) She became a correction officer in August of 2008, and was appointed by permanent appointment, subject to a probationary term, on September 6, 2012. (*Id.* ¶ 21.) The plaintiff signed a Notice of Conditions of Probation on August 1, 2012, in which she acknowledged that the probationary period of her employment was 24 months and "may be extended" by the number of days that she did not "perform the duties of [her] position." (ECF No. 24-1 at 26; *see also* ECF No. 21 ¶ 132.)

In November of 2013, the Department of Correction charged the plaintiff with failing to perform her duties and failing to submit a report. (ECF No. 21 ¶¶ 45-46.) The plaintiff lost two days as penalty for these charges. (*Id.* ¶ 48.)

About six months later, the Investigative Division sent the plaintiff an Interdepartmental Memorandum telling her to appear before the division the next day. (*Id.* ¶ 55.) At that interview, investigators told the plaintiff that in September of 2013 an inmate died at the Anna M. Kross Center on Rikers Island, at a time when the plaintiff was assigned to a "meal relief post." (*Id.* ¶¶ 56, 58.) The investigators questioned the plaintiff about her conduct on September 6 through September 9, 2013. (*Id.*)

On October 3, 2014, the plaintiff's probationary period was extended until April 2, 2015, because of her "punctuality and disciplinary records." (ECF No. 24-1 at 33.) The plaintiff signed a Notice of Extension of Probation Period, acknowledging the extension. (*Id.*)

---

[1] The facts are drawn from the allegations in the plaintiff's Amended Complaint, documents incorporated by reference into the complaint, and documents integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). I draw all reasonable inferences in the plaintiff's favor, and accept the factual allegations in the complaint as true for purposes of this motion. *See Town of Babylon v. Fed Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).

The plaintiff was subsequently subpoenaed to appear before a grand jury on February 10, 2015, in relation to the death of the inmate, and was served with a notice of charges and specifications on March 2, 2015. (*Id.* ¶¶ 63, 71.) The plaintiff denied any wrongdoing and requested "a review of the charges and evidence to prevent any unwarranted action against" her. (*Id.* ¶ 75.) The plaintiff mailed her answer to the address listed on the notice of charges—60 Hudson Street, New York, NY 10013. (*Id.* ¶ 73.) Her answer was returned by the U.S. Post Office as undeliverable. (*Id.* ¶ 74.) On April 2, 2015, defendant Dina Simon, Deputy Commissioner of the NYC Department of Correction, terminated the plaintiff's employment by letter without a hearing. (*Id.* ¶¶ 2, 14, 80, 83.)

The plaintiff then contacted defendant COBA, which referred her to defendant Koehler & Isaacs, a firm that COBA retained to represent correction officers in employment matters. (*Id.* ¶¶ 19, 89.) The plaintiff and a COBA delegate met with defendant Steven Isaacs, an attorney at Koehler & Isaacs, on April 6, 2015, and asked Isaacs to file an Article 78 petition. (*Id.* ¶¶ 17, 91-92.) Isaacs said that he would look into the matter, and told the plaintiff to get character references from her captains. (*Id.* ¶ 93.) The plaintiff got letters from some of her captains and other co-workers, which she then gave to Isaacs. (*Id.* ¶ 95.) Isaacs submitted a letter to former Commissioner Joseph Ponte on June 2, 2015, seeking the plaintiff's reinstatement; the character letters were attached to the letter. (*Id.* ¶ 96.)

Later that month, the plaintiff met with defendant Mercedes Maldonado, another attorney at Koehler & Isaacs. (*Id.* ¶¶ 18, 97.) Ms. Maldonado told the plaintiff that "there was nothing that the firm could do for her because she was on probation," and that the firm would not initiate an Article 78 proceeding. (*Id.* ¶ 98.)

The plaintiff then asked defendant Elizabeth Castro, Second Vice President of COBA, for assistance. (*Id.* ¶¶ 15, 99.) Ms. Castro said she would call Isaacs to find out why they did not commence the Article 78 proceeding. (*Id.* ¶ 99.) The plaintiff followed up with Castro "over the course

of a few months," but Castro stopped communicating with her. (*Id.* ¶¶ 102.) A COBA delegate told the plaintiff that COBA's First Vice President, Israel Rexach, had remarked that "'we give them some and they let us keep some'; (referring to correction officers, and COBA's practice of allowing the City to unlawfully dismiss from service some of them, but keep select ones that COBA vouched for)." (*Id.* ¶ 106.)

The plaintiff contends that Richard J. Koehler—head of defendant Koehler & Isaacs and former Commissioner of the Department of Correction—"is a link between the City and COBA and . . . still works for the City through his law firm by allowing thousands of correction officers with tenure in their employment to be unlawfully dismissed from service without due process of law." (*Id.* ¶¶ 109-10.)

The plaintiff commenced this action against the defendants on October 18, 2017. (ECF No. 1.) The City defendants filed a motion to dismiss the complaint on December 7, 2017, and the Union defendants and Firm defendants filed a motion to dismiss on December 14, 2017. (ECF Nos. 9, 13.) On February 12, 2018, the plaintiff amended her complaint, asserting claims pursuant to § 1983, the Fourteenth Amendment of the United States Constitution, and Civil Service Law Section 75, and alleging that the City defendants unlawfully terminated her employment as a correction officer, and that the Firm defendants and Union defendants failed to help her get her job back. (ECF No. 21.) The defendants move to dismiss the amended complaint. (ECF Nos. 24, 26.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A court considering a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). A court is not required to credit "mere conclusory

statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A claim has facial plausibility when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged;" the plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

A court must "liberally" construe a *pro se* plaintiff's complaint "to raise the strongest arguments that [it] suggest[s]," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), and must hold it "to less stringent standards than formal pleadings drafted by lawyers." *Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 303 (E.D.N.Y. 2014) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)). This "liberal treatment," however, does not "exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal citation and quotation marks omitted). The court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist," *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995), and must dismiss a claim "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement." *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

Moreover, the court is limited to the factual allegations in the complaint, the documents attached to the complaint as exhibits or incorporated in it by reference, matters of which judicial notice may be taken, and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Faconti v. Potter*, 242 Fed. Appx. 775, 777 (2d Cir. 2007); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("Where a document is not incorporated by

reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006))); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

## DISCUSSION

### I. Federal Claims

#### A. Private Actors

The Union defendants and Firm defendants argue that the § 1983 claims against them must be dismissed because as "purely private organizations" COBA and Koehler & Isaacs and their employees are "not subject to suit in federal court under Section 1983." (ECF No. 24-1 at 10.) They also argue that the Amended Complaint does not contain "plausible or substantial allegations" that they are linked to the government or government officials in a way that would make them state actors, which "precludes Plaintiff's claims under Section 1983 and the Fourteenth Amendment." (*Id.* at 12.)

A claim for relief under § 1983 must allege facts showing that the defendant acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. The "Fourteenth Amendment[], and § 1983, apply only to state actors." *Leeds v. Meltz*, 85 F.3d 51, 54 (2d Cir. 1996). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). A private actor may be liable under § 1983 if "'there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself.'" *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 188 (2d Cir. 2009) (*quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). This

nexus may exist where "the private actor was a willful participant in joint activity with the State or its agents" or where the private actor "conspire[d] with a state official to violate the plaintiff's constitutional rights." *Young v. Suffolk Cty.*, 922 F. Supp. 2d 368, 385 (E.D.N.Y.2013) (internal quotation marks omitted).

"To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Anilao v. Spota*, 774 F. Supp. 2d 457, 498 (E.D.N.Y. 2011) (quoting *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)). In other words, joint action can be found "where a private actor has operated as a willful participant in joint activity with the State or its agents, or acts together with state officials or with significant state aid." *Abdullahi*, 562 F.3d at 188 (citations and internal quotation marks omitted). "Conclusory allegations or naked assertions of a joint activity are not sufficient to survive a motion to dismiss." *Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) (internal quotation marks and alterations omitted).

To establish a § 1983 conspiracy claim, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed . . . ." *Ciambrello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *see also Walker v. Jastremski*, 430 F.3d 560, 564 n.5 (2d Cir. 2005) ("[C]onclusory or general allegations are insufficient to state a claim for conspiracy under § 1983 . . . ."). Although "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when [she] pleads conspiracy, . . . the pleadings must present facts tending to show

7

agreement and concerted action." *McIntyre v. Longwood Central School Dist.*, No. 07-CV-1337, 2008 WL 850263, at *11 (E.D.N.Y. Mar. 27, 2008) (internal quotation marks and citations omitted).

The plaintiff does not deny that the Union defendants and Firm defendants are private persons or entities, but argues that they "acted in concert with the City Defendants to deprive [her] of her property rights." (ECF No. 33 at 1.) The complaint includes only two allegations of concerted action, neither of which is sufficient to make the necessary showing. The first allegation is based on vague, third-hand information from a union delegate—that a former First Vice President of COBA "once told" the delegate that "'we give them some and they let us keep some'; (referring to correction officers, and COBA's practice of allowing the City to unlawfully dismiss from service some of them, but keep select ones that COBA vouched for)." (ECF No. 21 ¶ 106.) The second allegation is just an accusation without any factual content—that Richard Koehler "is a link between the City and COBA and . . . still works for the City through his law firm by allowing thousands of correction officers with tenure in their employment to be unlawfully dismissed from service without due process of law." (*Id.* ¶¶ 109-10.) These allegations do not state a joint action or conspiracy claim under § 1983. The plaintiff does not specify what the Union defendants or Firm defendants did in furtherance of the alleged conspiracy or how they deprived her of her rights, nor does she sufficiently allege a connection to a state actor. In other words, the plaintiff does not make anything beyond mere "conclusory" or "vague" allegations that the Union defendants and Firm defendants acted jointly or conspired with the City defendants to deprive the plaintiff of her constitutional rights. *See Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").

Accordingly, the plaintiff's § 1983 claims against the Union defendants and Firm defendants are dismissed.

B. *Due Process Clause of the Fourteenth Amendment*

The complaint alleges that defendant City of New York improperly eliminated the two-month probation period set forth in Civil Service Law Section 63, and that defendant Simon deprived the plaintiff "of her property and liberty interests in her tenured civil service position without due process" by "terminat[ing] her employment without notice and a hearing." (ECF No. 21 ¶¶ 122-24.)

The City defendants argue that the plaintiff was a probationary employee, and thus had no property interest. (ECF No. 28 at 13-15.) They also argue that she was given due process, because she could have instituted an Article 78 proceeding. (*Id.* at 16-17.)

"In order to prevail on a Section 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that [she] possessed a protected liberty or property interest; and (2) that [she] was deprived of that interest without due process." *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 338 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). The Constitution does not create property interests; property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). To have a property interest in her employment, an employee must have "a true and legitimate claim of entitlement" to it. *Jackson*, 652 F. Supp. 2d at 338. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello*, 292 F.3d at 313. However, when the employment is probationary, the public employee does not have a property interest in continued employment. *Donato v. Plainview-Old Bethpage Central Sch. Dist.*, 96 F.3d 623, 629-30 (2d Cir. 1996).

Although the plaintiff argues that her probationary period expired after two months, the record is clear that her initial probationary period was 24 months, and was extended to April 3, 2015. (*See* ECF No. 21 at 30; ECF No. 24-1 at 26, 33.) The plaintiff was terminated on April 2, 2015, (ECF No. 21 ¶ 80), one day before her probationary period expired. She therefore did not have a property interest in her continued employment at the time of her termination. *See Donato,* 96 F.3d at 629-30.

Citing Rule 5.2.7(c) of the Personnel Rules of the City of New York and *Albano v. Kirby*, 36 N.Y.2d 526 (1975), the plaintiff argues that her probationary term expired after two months. Rule 5.2.7(c) provides that "[t]he specified minimum period of probationary service, unless otherwise set forth in the terms and conditions of the certification for appointment or promotion as determined by the commissioner of citywide administrative services, shall be: (1) two months . . . ." (ECF No. 21 ¶ 25.) But Rule 5.2.7(c) specifically allows the City defendants to extend the probationary term beyond the two-month minimum, which they did in this case. The terms and conditions of the certification of the plaintiff's appointment set the probationary term as 24 months, and the term was subsequently extended to April 3, 2015. (*See* ECF No. 21 at 30; ECF No. 24-1 at 26, 33.) *Albano v. Kirby*, 36 N.Y.2d 526 (1975), does not help the plaintiff, because it involved a Suffolk County regulation providing that appointments became permanent at the end of a minimum probationary term unless the employee received written notice of the extension of the term. *See Albano*, 36 N.Y.2d at 533. There is no similar provision in the regulations at issue here. *See Cancel v. N.Y.C. Human Res. Admin./Dep't of Soc. Servs.*, No. 11-CV-9725, 2015 WL 505404, *2 (S.D.N.Y. Feb. 6, 2015). In any event, the plaintiff was notified on at least three different occasions that her probationary period had been extended. (*See* ECF No. 21 at 30; ECF No. 24-1 at 26, 33.)

Even if the plaintiff had a property interest in her continued employment, her due process claim nevertheless fails because the availability of Article 78 proceedings satisfy the post-deprivation due

10

process requirement. *See Negron v. City of New York*, No. 10-CV-2757, 2011 WL 4737068, *19 (E.D.N.Y. Sept. 14, 2011); *Davis v. City of New York*, No. 06-CV-3323, 2007 WL 2973695, at *5 (E.D.N.Y. Sept. 28, 2007) ("[I]t is well established that an Article 78 proceeding is a perfectly adequate post-deprivation remedy in the context of employment termination." (internal quotation marks omitted)); *McDonald v. Bd. of Educ. of City of New York*, No. 01-CV-1991, 2001 WL 840254, at *6 (S.D.N.Y. July 25, 2001) ("Constitution does not require the State to conduct a pre-termination hearing to determine the tenure status plaintiff failed to assert.").

Accordingly, the plaintiff's due process claim under the Fourteenth Amendment is dismissed.

C. *Liberty Clause of the Fourteenth Amendment*

The plaintiff alleges that she was deprived of her liberty interest under the Fourteenth Amendment because her "good name, reputation, honor and integrity have been forever damaged." (ECF No. 21 ¶ 138.) She asserts that the defendants' actions caused her to lose her career, "the value of being a city employee union-member," her pension, her past and future salaries, and other employment benefits. (*Id.*)

The City defendants argue that this claim must fail because the plaintiff does not allege that they "(1) made stigmatizing statements about her, (2) published those statements, or (3) made the statements concurrently with her termination." (ECF No. 28 at 18.) They also contend that the plaintiff's liberty interest was not deprived without due process because an Article 78 proceeding was available to the plaintiff after her termination. (*Id.* at 18-19.)

"For a government employee, a cause of action under Section 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment." *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 27 (E.D.N.Y. 2006) (citing *Patterson v. City of Utica,* 370 F.3d 322, 330 (2d. Cir.

11

2004)). To make out a plausible "stigma-plus" claim, the plaintiff must show (1) that the government made stigmatizing statements that call the plaintiff's "good name, reputation, honor, or integrity" into question, (2) that these statements were made public, and (3) that the statements were made "concurrently in time" to the plaintiff's dismissal. *Id.* "However, a finding of a violation of an employee's liberty interest is appropriate only if the terminating agency's officials made [the stigmatizing] statements about the terminated employee without affording the employee a hearing at which to rebut those charges." *Thomas v. Held*, 941 F. Supp. 444, 450 (S.D.N.Y. 1996) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980)).

The plaintiff does not allege that the City defendants made any public stigmatizing statements calling her "good name, reputation, honor, or integrity" into question. The plaintiff's termination letter, which the plaintiff does not allege was made public, merely states that her "service as a Probationary Correction Officer will no longer be required," and the plaintiff does not allege that the City defendants made any public statements concerning the reasons for her termination. (ECF No. 21 at 46.)

Moreover, the plaintiff had an available remedy to clear her name—an Article 78 proceeding. *See Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006) ("the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim . . . ."); *Rivera v. Community Sch. Dist. Nine*, 145 F. Supp. 2d 302, 308 (S.D.N.Y. 2001) ("New York's Article 78 proceeding has been held to be an adequate postdeprivation remedy.")

Accordingly, the plaintiff's liberty claim under the Fourteenth Amendment is dismissed.[2]

---

[2] The plaintiff alleges in her complaint that she "was singled out because she is Hispanic and the other officers assigned to that post were African-American females and younger than her." (ECF No. 21 ¶ 65.) To the extent the complaint, liberally construed, pleads an equal protection claim on the basis of race and age under § 1983, this wholly conclusory allegation is insufficient to state an equal protection claim. *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under § 1983, a complaint must

12

## II. State Claims

The plaintiff alleges that "she was entitled to the protections of Civil Service Law Section 75 before the summary termination of her tenured employment." (ECF No. 21 ¶ 123.) The City defendants argue that this claim is time-barred and should have been asserted in an Article 78 proceeding. (ECF No. 28 at 19-20.) Section 75 prohibits removal of a permanent employee "except for incompetency or misconduct shown after a hearing upon stated charges." N.Y. Civ. Serv. Law § 75(1). Even if the claim was not time-barred, Section 75 does not apply to probationary employees like the plaintiff. *See supra* at 10-11; *Finley v. Giacobbe,* 79 F.3d 1285, 1297 (2d Cir. 1996) ("Under New York law, 'it is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason.'" *quoting Meyers v. City of New York,* 622 N.Y.S.2d 529, 532 (2nd Dep't 1995)). To the extent the plaintiff's complaint, liberally construed, asserts other state law claims, I decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Union defendants' and Firm defendants' motion to dismiss the amended complaint is granted. The City defendant's motion to dismiss is granted.

---

contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983.")

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                        _____
                                        The Honorable Ann M. Donnelly
                                        United States District Judge

Dated: Brooklyn, New York
         January 7, 2019